UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANGELO MONISTERE                          CIVIL ACTION

VERSUS                                    NO: 13-22

VALENTINO LOSAURO, CLAWZ                  SECTION: J
DESIGNS, INC., and FRINGEY BY
VALENTINO, INC.

## ORDER AND REASONS

Before the Court is a *Motion to Vacate Default Judgment, for Stay of Execution, and for Dismissal* brought by Defendants Valentino Losauro, Clawz Designs, Inc., and Fringey by Valentino, Inc. (collectively, "Defendants") **(Rec. Doc. 20)**. Also before the Court is Plaintiff Angelo Monistere's opposition thereto. **(Rec. Doc. 24)**. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for reasons expressed below, that Defendants' motion should be **GRANTED.**

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff is the owner of a patent for a hair-cutting device called a "finger razor." Plaintiff alleges that Defendants have infringed on his patent by making, importing, and selling infringing products. Defendants' allegedly infringing products are called "the Clawz" and "the Fringey." Defendants have a website that offers those products for sale throughout the world and permits users to order the products online. Defendants admit that

1

they have sold products through the website and also at conventions in Florida and California. Defendants have sold one Clawz product to a Louisiana resident through their website, but that Louisiana resident was Plaintiff himself. Defendants claim that they have never otherwise manufactured, marketed, advertised, sold, or distributed their products in Louisiana and that they have never performed services in Louisiana. Defendants have no offices, property, or bank accounts in Louisiana and are not registered to do business in Louisiana. The parties agree that Plaintiff is domiciled in Louisiana and that Defendant Valentino Losauro is domiciled in Florida. The parties also agree that Defendants Clawz Designs, Inc. and Fringey by Valentino, Inc. are both incorporated in Florida and both have their principal place of business in Florida.

Plaintiff filed suit against Defendants in this Court on January 5, 2013. Defendants failed to appear in the suit, and the Court entered a preliminary default against them on September 10, 2013. The Court then entered a default judgment against Defendants on September 24, 2013. Defendants now move for the Court to vacate the default judgment.

## PARTIES' ARGUMENTS

Defendants argue that the Court should grant relief from the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(4), and that the Court should dismiss Plaintiff's complaint

2

pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that the judgment is void because the Court has neither general nor specific personal jurisdiction over Defendants. On the same grounds, Defendants also request relief from enforcement of the default judgment.[1]

## 1. General Personal Jurisdiction

Defendants argue that the Court lacks general personal jurisdiction over them because they have no continuous or systematic contacts with Louisiana. According to Defendants, they do not manufacture, market, advertise, sell, or distribute their products in Louisiana; they have no offices, property, or bank accounts in Louisiana; they are not registered to do business in Louisiana; and they have never performed services in Louisiana.

Plaintiff argues that Defendants' website subjects them to general personal jurisdiction in this forum, contending:

> Defendants have engaged, and continue to be engaged, in interstate commerce with the entirety of the world through the internet, via an interactive website that is

---

[1] Alternatively, Defendants argue that if the Court finds that it does, in fact, have personal jurisdiction over Defendants, the Court should grant relief from the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6) on the grounds of "any other reason that justifies relief," including, but not limited to, mistake, inadvertence, surprise, or excusable neglect. On the same grounds, Defendants also request a stay of proceedings to enforce the default judgment pending the Court's decision on the merits, pursuant to Federal Rule of Civil Procedure 62(b)(4). Because the Court finds that it lacks personal jurisdiction over Defendants, the Court declines to address this alternative argument.

3

presented in seven languages, and permits ordering,
research, and even training on how to use the infringing
device. ... This type of website has long ben [sic]
considered to establish 'continuous and systematic'
business contacts with a forum ... .

Pl.'s Opp., Rec. Doc. 24, p. 6. To support this contention,
Plaintiff cites to *Gorman v. Ameritrade Holding Corp.*, 293 F.3d
506, 511 (D.C. Cir. 2002).

## 2. Specific Personal Jurisdiction

Defendants argue that their only contact with Louisiana is a
single website purchase of one of their products by Plaintiff, a
Louisiana resident. Defendants contend that Plaintiff's purchase
constitutes unilateral activity by Plaintiff and thus that the
purchase does not constitute a minimum contact sufficient to
subject Defendants to specific personal jurisdiction in Louisiana.
Plaintiff argues that the sale of one allegedly infringing product
to Plaintiff in Louisiana is a sufficient contact to justify the
exercise of specific jurisdiction.

Defendants also contend that it would be unfair and
unreasonable for this Court to exercise specific jurisdiction over
them. According to Defendants, it would be overly burdensome to
require them to litigate in Louisiana because their operation is
very small and is based in Florida. Defendants also argue that all

4

of the relevant evidence is located in Florida. Defendants claim that given the facts of this case, they could not reasonably have foreseen being haled into court in Louisiana.

### LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides that a court must grant relief from a judgment if the judgment is void. FED. R. CIV. P. 60(b)(4) (2013); *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002). A judgment is void if the defendant is not subject to the court's personal jurisdiction. *See Jackson*, 302 F.3d 515. Additionally, a "defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds." *Id.* at 522 (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)). A defendant does not waive his right to object to personal jurisdiction by failing to appear in the suit before the court enters a default judgment. *Id.*

The Fifth Circuit has outlined the legal standard by which a district court must adjudicate a motion to dismiss for lack of personal jurisdiction:

> Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982). The plaintiff

5

need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. *Id.* This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* at 414, 104 S. Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414, 104 S. Ct. 1868 n. 8. . . .

6

>   The forum state may create, and this court would be bound
>   to apply, additional jurisdictional restrictions by
>   statute, *Adams*, 220 F.3d at 667, but Louisiana's
>   "long-arm" statute extends jurisdiction to the
>   constitutional limit, La. R.S. 13:3201(B), so the two
>   inquiries in this case collapse into one.

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *cert. denied*, *Insta-Mix, Inc. v. Luv' N' Care, Ltd.*, 548 U.S. 904 (2006) (internal citations and footnotes omitted).

**DISCUSSION**

**1. General Personal Jurisdiction**

An individual is subject to general personal jurisdiction in the state of his domicile. *United States v. Henderson*, 209 Fed. App'x 401, 402 (5th Cir. 2006) (citing *Milliken v. Meyer*, 311 U.S. 457, 463-64 (1940)). A corporation is subject to general personal jurisdiction both in its state of incorporation and in the state of its principal place of business. *See McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011). Additionally, with respect to out-of-state corporations, "[a] court may assert general jurisdiction ... to hear any and all claims against [out-of-state corporations] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home

7

in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851, citing *Int'l Shoe*, 326 U.S. 310, 317 (1945)); *see also Revell v. Lidov*, 317 F. 3d 467, 471 (5th Cir. 2002) (stating that general jurisdiction requires a defendant to have substantial, continuous, and systematic contacts with the forum state).

Here, Valentino Losauro, an individual, is domiciled in Florida. Clawz Designs, Inc. and Fringey by Valentino, Inc. are both incorporated in Florida and both have their principal place of business in Florida. It is clear that Defendants are not subject to general personal jurisdiction in Louisiana based on their domicile, incorporation, or principal places of business. Additionally, the fact that Defendants have an internet presence that extends to Louisiana does not subject them to general personal jurisdiction in Louisiana courts. Other than the one product sold to Plaintiff, Defendants do not manufacture, market, advertise, sell, or distribute products in Louisiana, and they have never performed services in Louisiana. Defendants have no offices, property, or bank accounts in Louisiana and are not registered to do business in Louisiana. For these reasons, it could hardly be said that Defendants have substantial, continuous, and systematic contacts with this forum that render them essentially at home in Louisiana. Therefore, the Court does not have general personal jurisdiction over Defendants.

8

Plaintiff's argument that the Court has general jurisdiction based on the reasoning in *Gorman* does not persuade the Court otherwise. In *Gorman*, the court held that there is general personal jurisdiction over a defendant who is "doing business" within a forum state. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 508 (D.C. Cir. 2002). In *Gorman*, the defendant, Ameritrade, was continuously providing online brokerage services through its website for users all over the United States, including users within the District of Columbia. *Id.* at 508, 510. The court found that the website was not merely passive because it did not only provide information but rather allowed users to open brokerage accounts, transmit funds, buy and sell securities, and borrow from Ameritrade. *Id.* at 512. Ameritrade had engaged in multiple electronic transactions with residents of the District of Columbia. *Id.* at 510. According to the court, "As a result of their electronic interactions, Ameritrade and its District of Columbia customers enter into binding contracts, the customers become the owners of valuable securities, and Ameritrade obtains valuable revenue." *Id.* at 512-13. The court found that because the website made it possible for Ameritrade to engage in these transactions twenty-four hours a day, these contacts could be "continuous and systematic" enough to warrant the exercise of general jurisdiction, depending on "the frequency and volume of the firm's transactions with District residents." *Id.* at 513. Here, Defendants' contact

with Louisiana does not even begin to approach the quality or quantity of the continuous business contacts that Ameritrade had with the District of Columbia in *Gorman*; therefore, Plaintiff's argument fails.

## 2. Specific Personal Jurisdiction

The Fifth Circuit uses the following standards to determine whether a court has specific jurisdiction over a defendant:

A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. 154. In *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002), we consolidated the personal jurisdiction inquiry into a convenient three-step analysis: "(1) whether the defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* at 378 (citing *Burger King Corp. v.*

10

*Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985)).

*Luv N' Care,* 438 F.3d at 469 (5th Cir. 2006) (internal citations and footnotes omitted).

### a. Does Plaintiff's Claim Arise from Defendants' Contacts with Louisiana?

Plaintiff has brought a claim for patent infringement based on Defendants' internet sales of allegedly infringing products. Plaintiff purchased one allegedly infringing product in Louisiana from Defendants' website, and Plaintiff maintains that this transaction suffices as a minimum contact such that the Court should exercise specific jurisdiction. It is therefore clear in this case that Plaintiff's patent infringement claim arises from the internet sale of a product to Louisiana, and so the claim arises from Defendant's contacts with Louisiana.[2]

### b. Did Defendants Purposefully Direct Their Activities Toward Louisiana or Purposefully Avail Themselves of the Privileges of Conducting Activities in Louisiana?

The Fifth Circuit has held:

---

[2] *Cf. Stomp, Inc. v. NeatO, L.L.C.*, 61 F. Supp. 2d 1074, 1075-76 (C.D. Cal. 1999) (in patent infringement case, court stated: "There is little question ... that the alleged contacts, [the defendant's] Internet sales of self-adhesive labeling systems, is closely related to the present action. The products being sold on [the defendant's] website incorporate the technology of the ... Patent at issue.").

11

When the cause of action relates to the defendant's contact with the forum, the "minimum contacts" requirement is satisfied, and "specific" jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297-98, 100 S. Ct. 559, 567-68, 62 L.Ed.2d 490 (1980). If the contact resulted from the defendant's conduct and created a *substantial* connection with the forum state, even a single act can support jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174, 2184 n. 18, 85 L.Ed.2d 528 (1985); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L.Ed.2d 223 (1957).

*Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (emphasis added).

In the internet context, the Fifth Circuit has adopted the *Zippo* test to determine whether a defendant has purposefully availed itself of the forum state through its internet presence *See Mink v. AAAA Development, L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999); *see also Revell*, 317 F.3d at 471-472. The *Zippo* test is as follows:

The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet... ." In this situation, personal jurisdiction is proper. ... At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. ... In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website."

*Mink*, 190 F.3d at 336 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Using the *Zippo* test, district courts within the Fifth Circuit have exercised specific jurisdiction where the defendant has a website that permits users within the forum state to order or

13

purchase products online, or where the defendant provides services to forum residents over the internet. *Gatte v. Ready 4 A Change, L.L.C.*, No. 11-2083, 2013 WL 123613, at *11 (W.D. La. Jan. 9, 2013); *see Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 901 (N.D. Tex. 2000); *see also AdvanceMe, Inc. v. Rapidpay, L.L.C.*, 450 F. Supp. 2d 669, 673-74 (E.D. Tex. 2006); *see also Tempur-Pedic Int'l v. Go Satellite, Inc.*, 758 F. Supp. 2d 366, 374-75 (N.D. Tex. 2010). In *Gatte*, the court found that the defendant's website was highly interactive because it allowed users to engage in live chats with the defendant's employees, to fill out applications online, and to make down payments to the defendant through the website. *Gatte*, 2013 WL 123613, at *11. The court found that the website's interactivity weighed in favor of finding specific jurisdiction but then declined to exercise personal jurisdiction for unrelated reasons. *Id.* at *11-13. In *Peeper's*, the defendant's website enabled users to purchase products, and the court found that the defendant had purposefully availed itself of Texas by "*regularly* transact[ing] business with Texas residents over its ... website." *Peeper's*, 106 F. Supp. 2d at 901-02 (emphasis added). Specific jurisdiction was also found to be proper in an intellectual property case where the defendant was not *regularly* transacting business with Texas residents but did provide services over the internet to Texas residents "at least twice." *AdvanceMe*, 450 F. Supp. 2d at 673-74.

14

The Court has found particularly instructive the following three intellectual property cases from district courts within the Fifth Circuit: *Tempur-Pedic Int'l v. Go Satellite, Inc.*, 758 F. Supp. 2d 366 (N.D. Tex. 2010); *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650 (E.D. Tex. 2007); and *Origin Instruments Corp. v. Adaptive Computer Sys., Inc.*, No. 97-2595, 1999 WL 76794 (N.D. Tex. Feb. 3, 1999).[3]  In *Tempur-Pedic*, the defendant operated two

---

[3] The Fifth Circuit has not issued appellate opinions in any of these cases. It thus appears that the Circuit Court has not instructed district courts regarding how they should decide issues of specific jurisdiction under these particular fact patterns. For that reason, the Court's decision in this matter involves a fact-intensive inquiry and a comparative analysis of other district court cases.

In addition to considering decisions from district courts in the Fifth Circuit, the Court has also found it useful to examine non-Fifth Circuit cases involving internet sales. For example, in *Stomp*, an intellectual property case, despite the fact that the court found that specific jurisdiction was proper, the court still took into consideration the fact that the internet sales in question were initiated by the plaintiff. *Stomp, Inc. v. NeatO, L.L.C.*, 61 F. Supp. 2d 1074, 1075-76 n.2 (C.D. Cal. 1999). In *Stomp*, the defendant sold products that allegedly infringed on the plaintiff's patent over the defendant's internet website, and some of the products were sold to California residents. *Id.* at 1075-76. The court, using the *Zippo* test, found that the defendant's website was "highly commercial" because it allowed the user to purchase products online; therefore, there were sufficient minimum contacts to subject the defendant to specific personal jurisdiction in California. *Id.* at 1078. The court found that "[a]lthough the actual number of sales to California citizens may be small, the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts." *Id.* The court held that specific jurisdiction was proper, but the court did make the following remark in a footnote:

> [The plaintiff] presents evidence of two sales made over the Internet by [the defendant] to California citizens. However, this evidence must be considered in light of the fact that these two sales were made to [the plaintiff] and a friend of his, both ... after this case and the instant motion had been filed.

*Id.* at 1076 n.2.

Similarly, in *Shamsuddin*, an intellectual property case where the sales in question were made to two acquaintances of the plaintiff, the court declined to exercise personal jurisdiction. *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 813 (D. Md. 2004). The court reasoned:

websites that sold products over the internet, making at least three sales to Texas residents. *Tempur-Pedic*, 758 F. Supp. 2d at 370. One of these Texas sales was to a private investigator that the plaintiffs hired. *Id.* Applying the *Zippo* test, the court found that the website was interactive because it allowed users to purchase products online. *Id.* 373-74. Despite this, the defendant argued that the internet sales to Texas residents did not warrant the exercise of specific jurisdiction because one of the sales in Texas was "manufactured by [the] plaintiffs to create jurisdiction in Texas" and "such unilateral, manufactured sales cannot form the basis for personal jurisdiction." *Id.* The court found that specific jurisdiction was proper, noting that the defendant had admitted to entering into other sales to Texas residents other than the plaintiffs' private investigator. *Id.* at 373.[4]

---

[The defendant's[ only contacts with Maryland are a commercial, interactive website which is accessible to Maryland residents (as it is to persons across the country and around the world), and two sales of the ... product to Maryland residents who are acquaintances of plaintiff ... . Two sales to Maryland residents and maintenance of a commercial website do not rise to the level of contacts of such "quality and nature" that the exercise of personal jurisdiction over [the defendant] would comport with due process.

*Id.*

[4] The *Tempur-Pedic* court stated:

The court recognizes that there are cases in this circuit that support the premise that a plaintiff cannot establish *in personam* jurisdiction based on such sales. *See, e.g., Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 375 (5th Cir.1987) (noting that defendant's contact must not have resulted from the unilateral activity of the plaintiff in order for specific jurisdiction to be proper); *QR Spex, Inc. v. Motorola, Inc.,* 507 F. Supp. 2d 650, 661 (E.D.Tex.2007) (refusing to consider sales that were initiated by plaintiff's investigator). But even if the court disregards the

16

In *QR Spex*, the defendant sold products that allegedly infringed on the plaintiff's patent. *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 653 (E.D. Tex. 2007). The plaintiff hired a private investigator, who purchased two of the allegedly infringing products by "reaching out to non-Texas retailers and having [a product] shipped to Texas." *Id.* at 661. The court stated:

> The Court finds it unnecessary to consider these purchases because they constitute [the plaintiff's] unilateral acts; albeit acts that successfully circumvented the measures [the defendant] undertook to avoid availing itself to this forum. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L.Ed.2d 92 (1987) (rejecting the notion that "a consumer's unilateral act of bringing the defendant's product into the forum State was a sufficient constitutional basis for personal jurisdiction over the defendant."). In any event, the Court cannot conclude

---

one sale to the Texas-based investigator plaintiffs hired, there are sufficient alleged sales to other Texas residents to establish a prima facie case for specific jurisdiction. In accusing plaintiffs of orchestrating as many as three sales to Texas, defendants appear to admit the existence of two other sales to Texas. The court could infer that plaintiffs, who failed to mention favorable evidence of additional sales in any prior court document, were previously unaware of such sales and therefore not responsible for arranging the two sales.

*Tempur-Pedic*, 758 F. Supp. 2d at 374-75.

that these sales are evidence that [the defendant] purposefully availed [itself] to this forum.

*Id.* at 661.

In *Origin Instruments*, the court made it clear that personal jurisdiction may not be established by the mere *possibility* that forum residents may purchase products on a defendant's website, without further proof that the defendant has purposefully availed itself of the forum state. *Origin Instruments*, 1999 WL 76794, at *4.

Here, Defendants' website does not merely relate information passively; rather, the website allows users to place orders online. However, there is no evidence that Defendants have engaged in repeated transactions with Louisiana residents over the site. Therefore, this website falls into the middle category of the *Zippo* test such that the question of specific jurisdiction may be determined by the level of interactivity of the website. The Court acknowledges that Defendants' website is highly interactive because it allows users to purchase allegedly infringing products over the internet. However, Defendants have only made one sale through the website to a Louisiana resident – Plaintiff. For this one contact with Louisiana to constitute purposeful availment of this forum by Defendants, the contact must result from Defendants' purposeful conduct, not merely from the unilateral activity of Plaintiff.

18

Unlike the defendant in *Peeper's*, Defendants are not *regularly* transacting business with Louisiana residents; and unlike the defendant in *AdvanceMe*, Defendants have not engaged in at least two transactions involving Louisiana residents. Rather, Defendants have only transacted business in Louisiana once, and that sale was made to Plaintiff. Therefore, like the courts in *Tempur-Pedic* and *QR Spex*, the Court will not rely on purchases made by Plaintiff to establish that Defendants have purposefully availed themselves of Louisiana. Other than the single transaction involving Plaintiff, Defendants appear to have no contacts with Louisiana. Despite the fact that Defendants' website is interactive, and the possibility that additional Louisiana residents *could* purchase products on the website, the Court agrees with the court in *Origin Instruments* that personal jurisdiction may not be established by the mere *possibility* that Louisiana residents may purchase products on Defendants' website, without further proof that Defendants have purposefully availed themselves of this forum. For these reasons, the Court finds that Defendants have not purposefully availed themselves of Louisiana and thus that the exercise of specific jurisdiction is not proper in this case.[5] Therefore, it is unnecessary for the Court to engage in a discussion of fairness and

---

[5] The Court's decision that specific jurisdiction is lacking here is bolstered by the decisions in *Stomp* and *Shamsuddin*, where two non-Fifth Circuit district courts both at least considered the fact that the internet sales in question were initiated by the plaintiff or by the plaintiff's associates.

reasonableness.

The Court has neither general nor specific personal jurisdiction over Defendants in this matter. Therefore, the default judgment **(Rec. Doc. 16)** is void and, and the Court must grant relief from that judgment pursuant to Federal Rule of Civil Procedure 60(b)(4).[6] The Fifth Circuit has made it clear that where a district court lacks personal jurisdiction over a defendant, the court has several choices. *Fogarty v. USA Truck, Inc.*, 242 F. App'x 152, 154 (5th Cir. 2007). It may dismiss the action with prejudice, dismiss the action without prejudice, or transfer the case to a district court where personal jurisdiction and venue are proper. *Id.* Here, the parties agree that Defendant Valentino Losauro is domiciled in Florida. The parties also agree that Defendants Clawz Designs, Inc. and Fringey by Valentino, Inc. are both incorporated in Florida and both have their principal place of business in Fort Myers, Florida. (Defs.' Mtn., Rec. Doc. 20-1, p. 2-3). Therefore, the United States District Court for the Middle District of Florida, Fort Myers Division, has general personal jurisdiction over all three Defendants in this case.[7] Venue is also proper in

---

[6]   Because the Court will vacate the default judgment and prohibit its enforcement, the Court need not address Defendants' alternative argument that the Court should grant relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6) and grant a stay of proceeding to enforce the judgment.

[7]   *See* discussion of general personal jurisdiction, *supra*, for details about determining whether a State has general jurisdiction over individual, natural persons and over corporate defendants.

that district court.[8] Therefore, the Court will transfer this case to that district. Additionally, because the Court lacks personal jurisdiction over Defendants in this matter, Defendants' *Motion for New Trial or to Amend Judgment* **(Rec. Doc. 21)** should be denied as moot.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' *Motion to Vacate Default Judgment* **(Rec. Doc. 20)** is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the *Default Judgment* **(Rec. Doc. 16)** is hereby **VACATED,** and enforcement of that judgment is hereby **PROHIBITED.**

**IT IS FURTHER ORDERED** that this matter is hereby **TRANSFERRED** to the United States District Court for the Middle District of Florida, Fort Myers Division.

**IT IS FURTHER ORDERED** that Defendants' *Motion for New Trial or to Amend Judgment* **(Rec. Doc. 21)** is **DENIED AS MOOT.**

---

[8] Venue for a civil action is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391 (West 2013). Defendant Valentino Losauro, a natural person, is domiciled in Florida and is therefore a resident of Florida for venue purposes. *See id.* The two corporate Defendants will be deemed to reside in any judicial district where they are subject to personal jurisdiction, which includes the judicial district encompassing Fort Myers, Florida, because Fort Myers is their principal place of business. *See id.* Because all three Defendants reside in Florida, venue is proper in any district where any of them resides, and the corporate Defendants both reside in Fort Myers, Florida. *See id.* Therefore, venue is proper as to all three Defendants in the United States District Court for the Middle District of Florida, Fort Myers Division.

New Orleans, Louisiana this 4th day of December, 2013.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE